## HOLSKE v. MERRILL.
### Patent Appeals No. 4360.
Court of Customs and Patent Appeals.
Nov. 8, 1940.

George C. Baldt, of Washington, D. C. (Ely & Pattison, of New York City, of counsel), for appellants.

Charles H. Andros, of Albany, N. Y., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences in an interference proceeding involving two counts which relate to the art of refrigerating with ice.

The counts read:

"2. The method of refrigerating with a block of ice whereby to confine the progressive meltage thereof substantially to the lower portions of said block which comprises initially supporting the ice at oppositely disposed ends only, dividing a flow of air to be cooled into separate, substantially equal streams and directing said streams simultaneously into contact with the opposite ends of said ice at and about the zones of initial support whereby to effect a relatively high ice meltage rate in these zones and thus cause said block to settle so that its central bottom surface is substantially below the level of the original zones of support and also to effect an initial chilling of said air whereby to increase its density and effect a downward flow of said streams, and thereafter directing said streams towards each other and under said block of ice to a central zone of confluence while maintaining said flowing streams in high, heat-transfer-relation to the bottom of said ice.

"4. The method of refrigerating with a body of ice whereby to confine the progressive meltage thereof substantially to the lower portions of said body which comprises dividing a flow of air to be cooled into two, separate, substantially equal streams, directing said streams simultaneously into contact with opposite ends of said body in zones near the bottom thereof, whereby to effect an 'undercutting' of said body in said zones and also to effect an initial chilling of the air to increase its density and effect a downward flow of said streams, and thereafter directing the flow of said streams beneath said body of ice to a central zone of confluence while maintaining said flowing streams in high, heat-transfer-relation to the bottom of said ice."

It appears from the record that originally two interferences were declared between the parties, and that proceedings growing out of a motion to dissolve and one to shift the burden of proof resulted in a consolidation of the two. The details of those proceedings need not be here recited. It is deemed sufficient to quote the statement of the case given by the Examiner of Interferences as follows:

"The counts in issue are certain claims of Merrill's two involved patents 2,062,139 and 2,062,140 which were copending as applications but were filed on different dates resulting in the original formation of this interference as two separate interferences. The Holske application was copending with the applications of Merrill which issued as the above patents and was filed before Merrill had filed the application which resulted in patent 2,062,140 but after the other Merrill application was filed. Merrill, however, is senior party, as to all counts because his first filed application upon which he relied in support of his motion to shift the burden of proof discloses the subject matter of all counts and was copending with his later filed application. Inasmuch as Merrill was the senior party as to all counts, the two original interferences were

consolidated. Since the Holske application was copending with the Merrill patents, as applications, Holske only has the burden of proving priority by a preponderance of the evidence."

The controversy here is confined to a narrow limit. The general question is whether the Holske patent, No. 2,029,870, discloses the subject matter of the counts, and the specific question is whether there is a disclosure of the step of dividing a flow of the air which is to be cooled into two separate substantially equal streams— a step defined in both counts.

For purposes of illustration, we here reproduce Fig. 2 of the Holske drawings.

With respect to the feature at issue, the examiner said:

"While the Holske patent does not specifically state that the air is divided into two substantially equal streams, no other conclusion could possibly be reached after studying the Holske patent drawing since it shows a symmetrical inner construction of the ice and food compartments. The Holske patent therefore not only describes the gist of the invention in counts 2 and 4 but it is apparent from the specification and drawing thereof that the desirable features or functions of the method in issue are necessarily obtained."

Fig. 2.

144

The board said:

"It is our view that Holske does not disclose the subject matter of the counts as to dividing a flow of air to be cooled into two separate substantially equal streams. In order to meet the terms of the counts, it is necessary to assume that Holske intended to have equal circulation of the air over baffles 4 and under the grids. Such a distribution of the air streams is not inherent in Holske but is only a conjectural possibility, whereas it is effected substantially in Merrill's early application by baffles 35 (Fig. 2).

"Furthermore, Holske's streams passing under the grids 7, even if these streams be assumed to be equal, do not, as streams, necessarily contact with the opposite ends of the ice. It is our view that the streams in Holske were merely intended to contact with the metal pieces 7 and 4. In any event, Holske does not teach the direction of the lower streams against the ice nor does he teach that the streams so directed against opposite ends of the ice effect a relatively high meltage rate or undercutting about the zones of initial support.

"In brief, if the counts were claims in the Holske patent, they would not point out and distinctly state any invention disclosed in that patent."

A request for rehearing was filed with the board. This was denied, the denial being accompanied by a brief statement in which it was said:

"This petition alleges misunderstanding on our part of the Holske patent, No. 2,-029,870. Our position is clearly, and, we believe, correctly stated in our decision. Rule 35 of the Rules of Practice and Section 4888, Rev. Statutes, 35 U.S.C.A. § 33, clearly require that the specification set forth the precise invention for which a patent is solicited. It is our view that the Holske patent has no such precise disclosure and that no one skilled in the art would define the invention of the Holske patent in the manner of the issue counts here involved."

The brief of appellant before us contends that the board misconstrued his patent in certain particulars, and argues the various points deemed by him to be pertinent. These arguments have been thoroughly considered by us. In the final analysis, they are all directed to an effort to show that the step of directing the flow of the air as defined in the counts is necessarily present in the functioning of his device. In other words, inherency is invoked to supply a limitation not mentioned in appellant's specification. If such features were clearly inherent, appellant would be entitled to rely upon inherency, but it should be clear.

Obviously, no one could deduce from anything stated in appellant's specification that he had in mind the division of "a flow of air to be cooled into separate, substantially equal streams." One can only surmise from the drawings that such might take place.

There is nothing particularly complicated about appellant's device, and its structural features are easily understandable from the figure above reproduced, but we are unable to say from those features that the method step at issue is inherent. The examiner thought it was; the board thought otherwise. Our own view, after fully considering the record and argument, is that there is not a sufficient disclosure in the patent to justify a holding contrary to that made by the board.

In consequence, the decision appealed from is affirmed.

Affirmed.